**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>ROBERT LEE KIMMELL,<br><br>　　　　　Defendant. | Case No. 3:14-CR-54-RCJ-CLB<br>　　　　　3:19-CV-628-RCJ<br><br>**ORDER** |

Defendant collaterally attacks his judgment and sentence under 28 U.S.C. § 2255, arguing ineffective assistance of counsel and violations of due process. Thorough review of the record demonstrates conclusively that Defendant is not entitled to relief and the Court therefore denies the motion. The Court further finds that no certificate of appealability should issue and instructs the Clerk of Court to enter a separate and final judgment in the related civil case.

**FACTUAL BACKGROUND**

In May 2014, a landlord called police after discovering firearms and drug paraphernalia in a bedroom of one of his units while evicting the tenants. A person named "Debra" rented the unit, but she also let a person named "Bobby" stay with her. The landlord stated that Bobby's photo was on a prison photo identification card that was in the bedroom bearing Defendant's name.

In the bedroom, the police officers found two guns (a shotgun and a .45 caliber pistol), suspected controlled substances (later confirmed to be psilocin mushroom material and marijuana), and drug paraphernalia, including an assortment of baggies of varying size, syringes, spoons, and a scale that had white powder on it. Additionally, they discovered pay/owe sheets.

A week later, police were surveilling a room at a hotel in Sparks, Nevada, when they saw Defendant and a woman leave in a stolen vehicle. They attempted to stop the vehicle after witnessing traffic violations. Although the pursuit ended because of the traffic levels, police found the vehicle parked on the side of the road the following day and recovered a .45-caliber ammunition round in the back of the vehicle. In addition, police went to Defendant's parents' house and obtained their authorization to search the residence.[1] In the backyard, police discovered a key to the car and a firearm holster under a pile of leaves.

A couple of months later, a confidential informant told police that Defendant was storing methamphetamine and firearms in a storage unit in Sparks, Nevada, without specifying the name of the storage facility. Police called the managers of various facilities until they found one where Defendant was renting a unit. The facility's records showed that he accessed the unit daily.

The manager of the facility gave the police permission to bring a drug-detection canine unit to the facility. While outside of Defendant's unit, the dog gave a positive alert for drugs. Based on this information, the police obtained a search warrant telephonically. Execution of the search warrant uncovered three ounces of methamphetamine in three separate bags, drug packaging material, correspondence addressed to Defendant, $1,500 cash, three firearms, including two sawed-off shotguns, and .45 caliber ammunition, which did not fit any of the firearms found in Defendant's storage unit.

---

[1] Defendant argues that consent was given under duress, (ECF No. 166 at 25–26), but does not provide any evidence to support this claim, nor does his mother allege duress in her affidavit, (ECF No. 166 Ex. V-1).

During the search, the facility manager and a detective testified that they saw Defendant slouched down in a gold Audi at the storage gate. But Defendant quickly left before police could stop him. However, police found him a few days later getting into a car at a Wal-Mart. Inside the car, police found a key for Defendant's padlock to his storage unit.

A jury convicted Defendant of various drug- and firearm-related charges in 2015, and the Court sentenced him in 2016. (ECF Nos. 114, 135.) On appeal, the Ninth Circuit affirmed Defendant's conviction and sentence aside from a remand to correct a clerical error. *United States v. Kimmell*, 725 Fed. App'x 586 (9th Cir. 2018). Subsequently, the Supreme Court denied Defendant's petition for certiorari. (ECF No. 160.) Presently, Defendant timely moves to vacate his conviction under § 2255.

## LEGAL STANDARD

A prisoner in custody "may move the court which imposed the sentence to vacate, set aside or correct the sentence" where the sentence is unconstitutional or unlawful, the court lacked "jurisdiction to impose such sentence," "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). This remedy is available only where the error is jurisdictional, constitutional, contains "a fundamental defect which inherently results in a complete miscarriage of justice," or includes "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962). A petitioner must prove, by a preponderance of the evidence, any grounds for vacating or modifying a sentence. *Johnson v. Zerbst*, 304 U.S. 458, 468–69 (1938).

A court should deny the motion if the record "conclusively show[s] that the prisoner is entitled to no relief." § 2255(b). Otherwise, a court should grant a hearing to make the necessary findings of fact and conclusions of law to rule on the motion. *Id.*

///

On dismissal, a court should determine whether to issue a certificate of appealability. A certificate is appropriate when the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). That is, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**ANALYSIS**

Defendant argues that trial counsel was ineffective in six different instances, in that he failed to: (1) properly argue the claim that confidential informant's identity should be revealed, (2) fully litigate the suppression of the search of Defendant's storage unit, (3) fully litigate the suppression of evidence found in Defendant's parents' backyard, (4) investigate and impeach material government witnesses, (5) call alibi witnesses, and (6) properly challenge the special verdict form. Defendant further argues that Section 2255 relief is appropriate due to the presence of *Napue* violations, *Brady* violations, and cumulative error.

*I.    Ineffective Assistance of Counsel*

To prove a claim of ineffective assistance of counsel, a petitioner must show that his counsel's assistance was deficient, and this deficiency prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is a strong presumption that counsel's performance is adequate; thus, counsel will be found deficient only when his "acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690–91. For prejudice, a petitioner must prove a reasonable probability that the outcome of the case would have been different. *Id.* at 694. The Court addresses each instance where counsel has been allegedly ineffective in turn.

*a.  Identity of Confidential Informant*

Defendant argues that counsel was ineffective in failing to convince this Court to either identify the confidential informant or hold an *in camera* hearing to determine whether release of

the informant's identity was warranted. Specifically, Defendant argues that he told counsel multiple times that the informant was Ms. Kelly Bryant, who Defendant identified as a habitual drug user with access to his storage unit. Defendant is correct that trial counsel did not explicitly identify Ms. Bryant as the suspected informant or provide her connections to this Court in the motion to reveal and produce the confidential informant. (ECF No. 71.)

However, this information was presented to the Ninth Circuit on appeal. Opening Brief of Appellant Robert Kimmell at 9, 11, *United States v. Kimmell*, 725 Fed. App'x 586 (9th Cir. 2018) (No. 16-10290). Accordingly, Defendant has "raised a claim and has been given a full and fair opportunity to litigate it on direct appeal," rendering the claim improper for future § 2255 motions. *United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir. 2000). Furthermore, Defendant's claim in reply that the Ninth Circuit addressed only this Court's decision to deny the motion to identify the informant is incorrect. The Ninth Circuit explicitly found both that this Court had not abused its discretion *and* that "[n]either did Kimmell establish that disclosure of the informant was 'relevant and helpful to the defense of the accused, or essential to a fair determination of the defendant's cause.'" *Kimmell*, 725 Fed. App'x at 587 (quoting *United States v. Rowland*, 464 F.3d 899, 904 (9th Cir. 2006)).

b. *Suppression of Evidence from Storage Unit*

Defendant next argues that counsel was ineffective in failing to attack the use of a canine unit to search the area outside of the storage units without first obtaining a warrant or consent. Defendant concedes that the walkway between the storage units is a common area, but argues that the approximately five-inch recess between the unit door and the common-space loading area "creates a clear and distinct boundary physically separating the two, forming a small recessed porch or threshold serving only that tenants [sic] doorway." (ECF No. 166 at 14.)

///

The use of a trained narcotics detection canine is not generally considered a "search" within the auspices of the Fourth Amendment. *United States v. Place*, 462 U.S. 696, 707 (1983). However, such detection may violate a person's rights when it is "accomplished through an unlicensed physical intrusion" of a constitutionally-protected area. *Florida v. Jardines*, 569 U.S. 1, 7 (2013). Nevertheless, a reasonable expectation in the privacy of a storage unit, *United States v. Johns*, 851 F.2d 1131, 1136 (9th Cir. 1988), does not cause the unit itself to rise to the level of a constitutionally-protected area similar to the home or curtilage.

Defendant's argument in reply—that the momentary physical touch of the canine's nose to the door of his storage unit constitutes an unconstitutional search—is unavailing. For this proposition, Defendant cites to *United States v. Jones*, 565 U.S. 400 (2012). However, as the Supreme Court noted in that case, its "theory is *not* that the Fourth Amendment is concerned with *any* technical trespass that led to the gathering of evidence. The Fourth Amendment protects against trespassory searches only with regard to those items ('persons, house, papers, and effects') that it enumerates." *Id.* at 411 n.8 (alteration in original) (quotation omitted). *See also Jardines*, 569 U.S. at 6 ("The Fourth Amendment does not . . . prevent all investigations conducted on private property."). In fact, the Supreme Court has explicitly distinguished between the constitutional expectation in the home and, correspondingly, the curtilage, and other non-residential property merely owned by a defendant. *Compare Jardines*, 569 U.S. at 6 ("[W]hen it comes to the Fourth Amendment, the home is first among equals.") *with Hester v. United States*, 265 U.S. 57, 59 (1924) ("[T]he special protection accorded by the Fourth Amendment . . . is not extended to the open fields."). Therefore, the use of a canine unit in the area outside of Defendant's storage unit did not violate his expectation of privacy, nor was the determination of counsel not to seek suppression on these grounds ineffective.

///

   c. *Suppression of Evidence from Parents' Backyard*

Defendant contends that counsel was ineffective in failing to move to suppress evidence located during or as a result of the allegedly unlawful search of his parents' backyard. However, Defendant alleges an unconstitutional search in that Keller crossed the curtilage of the home and somehow looked over "a six foot high wooden privacy fence and gate that was closed and locked" prior to obtaining his parents' consent to the search. (ECF No. 166 at 25.)[2] The issue with this argument is that, while such conduct, if true, could constitute an unconstitutional search, it was not then used to wrongfully obtain a warrant. Instead, police remained at the home until Defendant's parents arrived and then asked for and received their consent to search the property. Obtaining this consent is an intervening event which cures any issues with Keller's original search.

Even assuming, *arguendo*, that counsel's failure to move for suppression was ineffective, the Ninth Circuit held that this Court's decision to admit the evidence did not "more likely than not affect[] the verdict." *Kimmell*, 725 Fed. App'x at 587 (quoting *United States v. Martin*, 796 F.3d 1101, 1105 (9th Cir. 2015)). Therefore, Defendant cannot demonstrate a reasonable probability that the outcome would have been different if the evidence had been suppressed, and thus cannot satisfy the prejudice prong of *Strickland*.

   d. *Investigation/Impeachment of Witnesses*

Defendant's argument that counsel was ineffective for failing to properly investigate and impeach government witnesses concerns several different portions of the trial. First, Defendant argues that counsel should have investigated Defendant's claim that one of the government witnesses was lying about text messages he saw on Defendant's cell phone and that various items

---

[2] Detective Burns' report, which Defendant points to, admits that despite being "unsuccessful in making contact with the occupants . . . Detective KELLER observed a black and gray backpack hanging in a small tree, inside of the south side yard which was fenced off," (ECF No. 166 Ex. U), without describing precisely how Keller obtained this viewpoint.

of evidence contradicted witness testimony regarding the chase and recovery of the gold Audi. The Court rejects these arguments for the same reason as above—the Ninth Circuit found it unlikely that admission of the evidence affected the verdict.

Second, Defendant argues that counsel was ineffective in failing to impeach Detective Edmonson with prior grand jury testimony. However, Defendant once again fails to demonstrate prejudice. Edmonson's testimony during the trial was that he had not been involved in the surveillance and had never seen Defendant. Not only is such testimony exculpatory, Defendant's counsel derived it through cross-examination. Finally, the allegedly false testimony was given in front of a state grand jury, not a federal one, and therefore could not improperly influence the relevant federal proceedings.

Third, Defendant argues that counsel should have introduced into the record a police report written by Officer Friberg to refute the government's argument that Defendant independently knew the value of the firearms. This argument also fails because he does not provide any analysis as to how refutation of the government's argument would have affected his verdict.

Finally, Defendant argues that counsel was ineffective in failing to play a recording of an allegedly exculpatory phone call for the jury. According to Defendant, the phone call was between himself and Ms. Amanda McNevin, and she admitted that Defendant was not in the vehicle with her on May 30, 2014, as alleged by the government. Even assuming Defendant's description of the phone call is accurate, counsel is granted "a heavy measure of deference" in his determination of what tactics to pursue in trial. *Strickland*, 466 U.S. at 690–91. The Court cannot find that failure to introduce such a call into evidence is unreasonable when review of the record demonstrates offsetting evidence—such as that Ms. McNevin was herself the focus of police surveillance on May 30th (not Defendant) and a key to the car Defendant alleges he was not in was found amongst the evidence located in his parents' backyard.

  *e. Alibi Witnesses*

  Defendant argues that counsel should have called alibi and other favorable witnesses, specifically mentioning Ms. McNevin, Ms. Debra Steinberg, and Defendant's mother. However, Defendant does not provide any evidence as to whether they had been available and willing to testify, nor what the substance of their testimony would have been.[3] Furthermore, Defendant does not explain how testimony from the named witnesses would materially offset the physical evidence provided at trial. Therefore, the Court cannot find that the testimony of the named witnesses raises a possibility of acquittal "sufficient to undermine confidence in the outcome." *Lord v. Wood*, 184 F.3d 1083, 1096 (9th Cir. 1999) (quoting *Strickland*, 466 U.S. at 694).

  *f. Special Verdict Form*

  Defendant argues that the failure of counsel to object to the verdict form, specifically that it did not include the option to select a lesser-included offense for each of the drug-related charges (Counts Four, Seven, and Eight), constituted ineffective assistance. Defendant is correct that criminal defendants have a constitutional right to instruction regarding lesser-included offenses. *Keeble v. United States*, 412 U.S. 205, 208 (1973); Fed. R. Crim. P. 31(c). However, the record demonstrates that Defendant's constitutional right was sufficiently met. The jury instructions included an instruction on lesser-included offenses for drug charges. (ECF No. 119 at Instruction No. 30.) Further, the jury was well aware of its ability to find a verdict for a lesser-included offense, as was demonstrated by its note to the Court asking how to indicate such a verdict, (ECF No. 149 at 17:14–16), and its eventual verdict finding Defendant not guilty on Count 4 but guilty of the

---

[3] In his Reply, Defendant avers that the named witnesses were available (or could be made so). However, he still does not discuss what the substance of their testimony would have been. In a different section, Defendant argues that cross-examination of Ms. Bryant would have revealed her criminal history, but she is not one of the "exculpatory" witnesses named by Defendant. Further, Defendant has not provided sufficient evidence to show that Fed. R. Evid. 609 would not bar questions regarding her criminal history.

lesser-included offense, (*Id.* at 23:16–22). Thus, Defendant cannot show that the lack of a lesser-included option for each individual drug-related charge, or the failure of counsel to object to a verdict form without such options, violated his constitutional rights.

## II.     Due Process Challenge

Defendant raises a due process challenge under *Napue v. People of the State of Illinois*, 360 U.S. 264 (1959), arguing that the prosecution deliberately deceived the jury by either soliciting or failing to correct testimony which it knew to be false. Reversal of a jury verdict due to a *Napue* violation "requires that the false evidence be material." *Libberton v. Ryan*, 583 F.3d 1147, 1164 (9th Cir. 2009). That is, a defendant must demonstrate "there is 'any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Id.* (quoting *Hayes v. Brown*, 399 F.3d 972, 985 (9th Cir. 2005) (*en banc*)).

Here, Defendant alleges three instances of perjured testimony that violated his due process rights. The Court rejects each of Defendant's claims. Detective Edmonson's allegedly conflicting testimony is not material, as discussed above. Detective Keller's testimony, that he saw Defendant exit Room #311 of the Aloha Inn on May 30, 2014, is not material given the weight of the physical evidence presented to link Defendant to the black Chrysler 200. Officer Sandy's testimony as to the location of the bullet at the time of the trial is also not material.

## III.    Brady Violations

Defendant also argues that the government committed *Brady* violations in failing to "make defense aware of property & evidence that was destroyed" and in failing to inform defense of subsequent arrests of the informant and Ms. Steinberg. (ECF No. 166 at 53.) A *Brady* violation requires that "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Stickler v. Greene*, 527 U.S.

1  263, 281–82 (1999). Defendant fails to allege that any of these three elements are met, much less

2  provide supporting argument.[4] Therefore, the Court denies Defendant's claim of *Brady* violations.

### IV.  Cumulative Error

Defendant's final listed argument is "cumulative error," (ECF No. 166 at 9), but Defendant does not provide any argument supporting this issue in his motion. In Defendant's reply, he argues that the "cumulative error" argument is that if all of counsel's "mistakes" are added together, it demonstrates overall ineffectiveness and prejudice. Nevertheless, the Court's analysis for each individual allegation notes that there was either no ineffective assistance or no demonstrated prejudice; considering the record as a whole does not change this analysis.

### V.  Certificate of Appealability

As the Court denies the petition, it must determine whether to issue a certificate of appealability. The Court finds that Defendant has neither made the required "substantial showing of the denial of a constitutional right," nor that reasonable jurists would find the Court's above analysis "debatable." Accordingly, the Court declines to issue a certificate of appealability.

///

///

///

///

///

///

///

---

[4] Defendant's allegations in reply, that he could have used the criminal histories of Ms. Steinberg and Ms. Bryant, fail, as above, in arguing that such evidence would not be barred by Fed. R. Evid. 609. Furthermore, Ms. Steinberg is one of the "exculpatory" witnesses identified by Defendant, therefore questioning regarding her criminal history would likely have been counter-productive to his case.

**CONCLUSION**

IT IS HEREBY ORDERED that Defendant's Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 166) is DENIED.

IT IS FURTHER ORDERED that no certificate of appealability shall issue.

IT IS FURTHER ORDERED that the Clerk shall ENTER a separate and final judgment under Federal Rule of Civil Procedure 58(a) as directed by *Kingsbury v. United States*, 900 F.3d 1147 (9th Cir. 2018).

IT IS SO ORDERED.

Dated:  April 22, 2020.

_____
ROBERT C. JONES
United States District Judge